# IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER: CV-2021-01-0258

LOLETA HUBBARD
1112 Fess Avenue
Akron, OH, 44307

-VS-                                              **SUMMONS**

LHC GROUP, INC.
1225 E Waterloo Road
Akron, OH 44306

**TO the following:**

LHC GROUP, INC.
1225 E Waterloo Road
Akron, OH 44306

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto. The name and address of the Plaintiff's attorney is:

DANIEL S. DUBOW
25200 Chagrin Blvd.
Suite 200
Beachwood, OH 44122

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service. Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

January 25, 2021

Exhibit A


**UNITED STATES POSTAL SERVICE.**

Date Produced: 02/08/2021

SUMMIT COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 5774 4600 0001 1035 14. Our records indicate that this item was delivered on 02/02/2021 at 01:29 p.m. in AKRON, OH 44306. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :   **1225 E WATERLOO RD
AKRON, OH 44306**

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:   C2482727.14273614

Exhibit A

## IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2021-01-0258

LOLETA HUBBARD
1112 Fess Avenue
Akron, OH, 44307

-VS-                                                                                    **SUMMONS**

LHC GROUP, INC.
1225 E Waterloo Road
Akron,   OH   44306

**TO the following:**

LHC GROUP, INC.
C/O COGENCY GLOBAL INC
3958-D BROWN PARK DR
Hilliard, OH   43026

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

DANIEL S. DUBOW
25200 Chagrin Blvd.
Suite 200
Beachwood, OH   44122

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

January 25, 2021

**Exhibit A**

IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| LOLETA HUBBARD<br>1112 Fess Avenue<br>Akron, Ohio 44307<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>LHC GROUP, INC.<br>1225 E Waterloo Road<br>Akron, Ohio 44306<br><br>　**Serve also:**<br>　LHC Group, Inc.<br>　c/o Cogency Global Inc.<br>　3958-D Brown Park Drive<br>　Hilliard, Ohio 43026<br><br>　　-and-<br><br>TAMMY LAST NAME UNKNOWN<br>c/o LHC Group, Inc.<br>1225 E Waterloo Road<br>Akron, Ohio 44306<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Loleta Hubbard, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

**PARTIES AND VENUE**

1. Hubbard is a resident of the city of Akron, county of Summit, state of Ohio.

2. LHC Group, Inc. (hereinafter, "Almost Home") is a foreign corporation that operates a business located at 1225 E Waterloo Road, Akron, Ohio 44036.

3. Almost Home conducts substantial business in the state of Ohio.

4. Upon information and belief, Tammy Last Name Unknown is a resident of the state of Ohio.

The Employee's Attorney.™



5. Tammy LNU aided, abetted, incited, coerced, and/or compelled Almost Home's discrimination against Hubbard.

6. Tammy LNU aided, abetted, incited, coerced, and/or compelled Almost Home's retaliation against Hubbard.

7. Tammy LNU aided, abetted, incited, coerced, and/or compelled Almost Home's discriminatory discharge of Hubbard.

8. Tammy LNU made and/or participated in the adverse actions asserted herein.

9. All of the material events alleged in this Complaint occurred in Summit County.

10. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and (4).

11. Venue is proper pursuant to Civ. R. 3(C)(3)&(6).

12. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

13. Hubbard is a former employee of Almost Home.

14. Hubbard is African American.

15. Almost Home hired Hubbard in February 2020.

16. Almost Home employed Hubbard as a Certified Home Health Aide.

17. Almost Home operated an office in Akron, Ohio.

18. During all material events asserted herein, Almost Home employed Tammy Last Name Unknown at the Akron office.

19. Tammy LNU is Caucasian.



20. During all material events asserted herein, Almost Home employed Bethany Last Name Unknown at the Akron office.

21. Bethany LNU is Caucasian.

22. Almost Home employed Tammy LNU and Bethany LNU as schedulers.

23. Almost Home schedules and instructs Certified Home Health Aides to work at homes of patients of Almost Home.

24. If Almost Home does not schedule for a Certified Home Health Aide to work at a patient's home, then that Certified Home Health Aide will not receive compensation.

25. A Certified Home Health Aide at Almost Home is only compensated if she is scheduled at and working at a patient's home.

26. During Hubbard's employment, Hubbard witnessed Tammy LNU yell at African American employees.

27. During Hubbard's employment, Hubbard did not witness Tammy LNU yell at Caucasian employees.

28. During Hubbard's employment, Tammy LNU restricted access to African American employees to certain areas of the office.

29. During Hubbard's employment, Tammy LNU did not restrict access to Caucasian employees to certain areas of the office.

30. In July 2020, Tammy LNU scheduled Hubbard to work with a patient of whom Hubbard knew through family relationships.

31. Hubbard asked Tammy LNU if she could be scheduled to work with a different patient because Hubbard had a previously strained relationship with the patient.



The Employee's Attorney.™

3

Exhibit A

32. Tammy LNU refused to schedule Hubbard with a different patient when Hubbard asked to work with a different patient because Hubbard had a previously strained relationship with the patient.

33. Upon information and belief, Almost Home had other available patients where Hubbard could have been scheduled when she asked to work with a different patient because Hubbard had a previously strained relationship with the patient.

34. Tammy LNU did not refuse to schedule Caucasian employees with different patients when Caucasian employees asked to be scheduled with a different patient.

35. When Tammy LNU refused to schedule Hubbard with a different patient, Hubbard worked with the patient as instructed.

36. Due to the strained relationship with the patient, the patient delayed signing Hubbard's timecard.

37. Due to the patient delaying the signing of Hubbard's timecard, Hubbard ultimately turned in her timecard late.

38. Hubbard explained the timecard issue to Tammy LNU.

39. Hubbard asked Tammy LNU if Tammy LNU could add the 42 hours she worked to the upcoming pay cycle.

40. Hubbard explained to Tammy LNU that due to her economic status, she would be unable to afford gas to drive to a new patient if she was paid for the hours that she worked.

41. Tammy LNU refused to apply the 42 hours to Hubbard's upcoming pay cycle.

42. Upon information and belief, Tammy LNU had applied previously worked hours to an upcoming pay cycle under similar circumstances for Caucasian employees.

43. Hubbard waited a week and still did not receive her pay for the timecard that she submitted.



The Employee's Attorney.™

4

Exhibit A

44. Hubbard called Almost Home's Akron office on or about July 24, 2020 to inquire as to why she still had not received her pay.

45. When Hubbard called Almost Home's Akron office on July 24, 2020, an individual from their Human Resource department advised that it was taking longer than normal as Hubbard had provided her hours via a timecard rather than providing her hours online.

46. Prior to Hubbard's July 24, 2020 call, Hubbard had not had issues with being paid after submitting prior timecards.

47. A week after Hubbard's July 24, 2020 call, Almost Home still had not paid Hubbard for the 42 hours she had worked.

48. Hubbard called the Akron office again on July 31, 2020 to inquire as to why she had not yet been paid for the hours she had worked.

49. During the July 31, 2020, Almost Home advised Hubbard that she had been "removed from the system."

50. Upon information and belief, Almost Home only removes employees from its system when that individual's employment has been terminated.

51. Prior to Hubbard's July 31, 2020, Hubbard had not received any discipline while working for Almost Home.

52. During the July 31, 2020 call, Hubbard advised the individual from Almost Home's human resource department that Tammy LNU had treated her less favorably than similarly situated Caucasian employees.

53. During the July 31, 2020 call, Hubbard advised the individual from Almost Home's human resource department that Tammy LNU was rude to African American employees but not rude to Caucasian employees.



54. During the July 31, 2020 call, Hubbard advised the individual from Almost Home's human resource department that Tammy LNU would not apply her hours worked to the next work week when Tammy had done the same for Caucasian employees.

55. Defendant has a policy and practice of fully investigating complaints of discrimination.

56. Alternatively, Defendant does not conduct investigations after receiving a complaint of discrimination.

57. Defendant has a policy and practice of getting statements from all participants to a complaint of discrimination.

58. Defendant has a policy and practice of getting written statements from all participants to a complaint of discrimination.

59. Following Hubbard's July 31, 2020 phone call, Defendant did not get a statement from Hubbard regarding her complaint of race discrimination.

60. Following Hubbard's July 31, 2020 phone call, Defendant did not get a statement from Tammy LNU regarding her complaint of race discrimination.

61. Defendant violated its policy and practice of fully investigating significant workplace incidents regarding Hubbard's discrimination complaint.

62. Defendant's failure to follow its policy and practice of fully investigating significant workplace incidents was an adverse action against Hubbard.

63. Defendant's failure to follow its policy and practice of getting written statements from all participants to significant workplace incidents was an adverse action against Hubbard.

64. Defendant did not discipline Tammy LNU as a result of Hubbard's discrimination complaint.

65. Defendant ratified Tammy LNU's race discrimination as a result of not taking any corrective action following Hubbard's complaint of discrimination.



The Employee's Attorney.™

6

Exhibit A

66. Following Hubbard's July 31, 2020 phone call, Almost Home did not schedule Hubbard to work with any other patients.

67. Following Hubbard's July 31, 2020 phone call, Tammy LNU did not schedule Hubbard to work with any other patients.

68. As a result of not scheduling Hubbard to work with any other patients, Almost Home terminated Hubbard's employment on or about July 31, 2020.

69. As a result of not scheduling Hubbard to work with any other patients, Tammy LNU terminated Hubbard's employment.

70. Defendants terminated Hubbard's employment because of her race.

71. Defendants terminated Hubbard's employment in retaliation for making a protected complaint.

72. Upon information and belief, Almost Home has a progressive discipline policy.

73. Prior to terminating Hubbard's employment, Almost Home had not issued Hubbard a verbal warning.

74. Prior to terminating Hubbard's employment, Almost Home had not issued Hubbard a written warning.

75. Prior to terminating Hubbard's employment, Almost Home had not issued Hubbard a final warning.

76. Almost Home violated its own progressive discipline policy when it terminated Hubbard's employment.

77. Upon information and belief, Almost Home does not violate its own progressive discipline policy when terminating the employment of Caucasian employees.



78. Upon information and belief, Almost Home does not violate its own progressive discipline policy when terminating the employment of individuals who have not made protected complaints.

79. Almost Home violated its own progressive discipline policy when it terminated Hubbard's employment because of her race.

80. Almost Home violated its own progressive discipline policy when it terminated Hubbard's employment in retaliation for Hubbard making a protected complaint.

## COUNT I: RACE DISCRIMINATION

### (Against Defendant LHC Group, Inc.)

81. Hubbard restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

82. Throughout her employment, Hubbard was fully competent to perform her essential job duties.

83. Almost Treated treated Hubbard differently than other similarly situated employees based on her race.

84. Almost Home treated similarly situated Caucasian employees more favorably than Hubbard due to her race.

85. Almost Home violated R.C. § 4112.01 *et seq.* by discriminating against Hubbard due to her race.

86. On or about July 31, 2020, Almost Home terminated Hubbard without just cause.

87. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

88. Defendant terminated Hubbard's employment based on her race.



89. Defendant violated R.C. § 4112.01 *et seq.* when it terminated Hubbard's employment based on her race.

90. Hubbard suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

91. As a direct and proximate result of Defendant's conduct, Hubbard has suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT II: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

### (Against All Defendants)

92. Hubbard restates each and every prior paragraph of this complaint, as if it were fully restated herein.

93. As a result of the Defendants' discriminatory conduct described above, Hubbard complained about the race discrimination she was experiencing.

94. Subsequent to Hubbard's reporting race discrimination, Defendants failed to conduct an investigation.

95. Subsequent to Hubbard's reporting race discrimination, Defendants failed to take any corrective action.

96. Subsequent to Hubbard's reporting race discrimination, Defendants ratified the race discrimination that Hubbard experienced.

97. Subsequent to Hubbard's reporting race discrimination, Defendants delayed payment to Hubbard for compensation she was owed.

98. In Almost Home delaying compensation that Hubbard was owed, Hubbard suffered damages.

99. Subsequent to Hubbard's reporting race discrimination, Defendants terminated Hubbard's employment.



The Employee's Attorney.™

9

Exhibit A

100. Defendants' actions were retaliatory in nature based on Hubbard's opposition to the unlawful discriminatory conduct.

101. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "for any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section..."

102. Hubbard suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

103. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Hubbard, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION

### (Against Defendant Tammy LNU)

104. Hubbard restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

105. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

106. Tammy LNU aided, abetted, incited, coerced, and/or compelled Almost Home's discriminatory treatment of Hubbard.

107. Tammy LNU aided, abetted, incited, coerced, and/or compelled Almost Home's delaying of payment to Hubbard.

108. Tammy LNU aided, abetted, incited, coerced, and/or compelled Almost Home's failure to schedule new patients to Hubbard.



109. Tammy LNU aided, abetted, incited, coerced, and/or compelled Almost Home's discriminatory termination of Hubbard.

110. Tammy LNU violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

111. Hubbard suffered emotional distress as a result of Tammy LNU's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

112. As a direct and proximate result of Tammy LNU's conduct, Hubbard has suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Hubbard demands from Defendants the following:

(a) Issue an order requiring Almost Home to restore Hubbard to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Hubbard for compensatory damages, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Hubbard's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.



The Employee's Attorney.™

11

Exhibit A

*Sandra Kurt, Summit County Clerk of Courts*

Respectfully submitted,

Daniel S. Dubow (0095530)
Taurean J. Shattuck (0097364)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email: daniel.dubow@spitzlawfirm.com
       taurean.shattuck@spitzlawfirm.com

*Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Loleta Hubbard demands a trial by jury by the maximum number of jurors permitted.

Daniel S. Dubow (0095530)
Taurean J. Shattuck (0097364)
**THE SPITZ LAW FIRM, LLC**

